UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
LINFORD A. BROWN, JR and CROWN
ACQUISITION HOLDING CORP.,
                                        Plaintiff,

       -against-                                    **MEMORANDUM AND ORDER**
                                                                14-CV-5034 (DRH)(AYS)

CHRISTOPHER VITUCCI, B.C.A
LEASING LTD., B.C. BENJAMIN AUTO
SALES, INC., MANUEL F. NASH, GLEN
T. KENAH, AND COUNTY OF NASSAU,


                                        Defendants.
---------------------------------------------------------X
**SHIELDS, United States Magistrate Judge:**

       The claims in this case stem from the arrest of Plaintiff Linford Brown ("Brown") after

the receipt of a civilian complaint with respect to alleged non-payment of the lease of Brown's

luxury car. This action was commenced on August 25, 2014. Complaint filed under Docket

Entry herein ("DE") 1. An amended complaint was filed in 2017. See Amended Complaint

("Am. Compl.") DE 47.

       As explained in further detail below, Plaintiffs Brown and Crown Acquisition Holding

Corp, ("Crown") (collectively "Plaintiffs") claim that they entered a car lease agreement (the

"Lease") with Defendants Christopher Vitucci, and his company BCA Leasing LTD ("BCA")

(collectively "Leasing Defendants"). According to Plaintiffs, after submitting lease payments to

the Leasing Defendants, Vitucci and BSA wrongfully withheld the funds and reported Plaintiffs'

leased car stolen. Plaintiffs claim that thereafter two detectives, Defendants Manuel F. Nash

("Nash") and Glen T. Kenah ("Kenah") conspired with the Leasing Defendants in charging and

arresting Brown, despite knowing that any charges were false. Based upon Defendants' alleged

conduct, Plaintiffs assert state law claims as well as Federal civil rights pursuant to 42 U.S.C.

Section 1981, 1983, 1985 and 1986. The constitutional claims arise under alleged violations of

the Fourth, Fifth, and Fourteenth Amendments to the Constitution. In addition to claims against

individuals, Plaintiffs claims municipal liability pursuant to <u>Monell v. Department of Soc. Servs.</u>,

436 U.S. 658 (1978). DE 47.

Presently before Court are Plaintiffs' motions to compel pursuant to Rules 30 and 37(a)

of the Federal Rules of Civil Procedure. The first motion seeks to compel the deposition of

Police Commissioner Ryder and Plaintiffs' second motion seeks to compel discovery. DE 78, 81.

BACKGROUND

I.     <u>Procedural History</u>

As noted above, this action was commenced on August 25, 2014. DE 1. On October 1,

2014, Defendants B.C. Benjamin Auto Sales, Inc., Christopher Vitucci, and B.C.A. Leasing, Ltd.

filed an answer. <u>See</u> DE 12. On October 8, 2014, the County Defendants filed their answers. The

Defendants' Answers included a cross claim for indemnification from the other Defendants in

the event that Plaintiffs prevails.

On November 7, 2014, Magistrate Judge Steven I. Locke, the then-assigned Magistrate

Judge, conducted an initial conference, at which time the parties were directed to complete

discovery by June 15, 2015. DE 21, 22. Shortly after holding a status conference on January 29,

2015, Magistrate Judge Locke recused himself from this matter. DE 23, 24. Thereafter, on March

23, 2015, the case was re-assigned to this Court. DE 25.

Upon joint motion, this Court extended the date for discovery until August 17, 2015. On

August 28, 2015, Plaintiffs' Counsel submitted a letter motion requesting a pre-motion

conference to file a motion to withdraw. DE 27. Upon holding a conference, this Court granted

the motion to withdraw and stayed the case for a period of thirty (30) days to allow Plaintiffs to obtain new counsel. DE 28. On September 1, 2016, after being given multiple extensions of time to secure new counsel, Plaintiffs informed the Court that they had procured representation. DE 36. This Court held a status conference on October 6, 2016, at which time Plaintiff Brown appeared by himself. DE 38. Upon Plaintiffs' Counsel entering a notice of appearance, this Court directed counsel to appear for a status conference. That conference was held on January 25, 2017, at which time the Court directed discovery to conclude by April 7, 2017. DE 41, 42.

Thereafter, upon Defendants' consent, Plaintiffs filed an amended complaint. DE 47.  On March 12, 2017, the Court granted a 60 day stay of the proceedings based upon health concerns of the attorney representing Vitucci and the BCA Defendants. DE 52. After the stay was lifted, this Court extended the time for discovery to conclude until July 28, 2017. See Order dated April 25, 2017. Approximately, two months after the stay was lifted, Counsel for Vitucci and the BCA Defendants advised the Court that due to illness he was no longer able to represent his clients. Based upon such representation, this Court granted Counsel's motion to withdraw and stayed discovery for sixty (60) days. See DE 63, Orders dated June 28 and 29, 2017.

On September 22, 2017, new counsel filed a notice of appearance on behalf of Vitucci and the BCA Defendants. DE 68, 69.  October 2, 2017, this Court held a status conference. During the conference, Plaintiffs stated their intention to depose Vitucci, Officer Kenah ("Kenah"), and Police Commissioner Ryder ("Ryder").  After the defense objected to the taking of Ryder's deposition, this Court directed that Kenah's deposition proceed first so that the parties would be in a better position to determine whether a deposition of Ryder was indeed necessary. In the event that Ryder's deposition continued to be sought, counsel were directed to confer regarding the time and scope of any such deposition. The Court also set all discovery to conclude

on March 1, 2018. DE 70, 71. On December 13, 2017, this Court granted the parties' joint request for an extension of time until March 26, 2018. By that same order, the Court directed Counsel to submit a joint status letter by December 22, 2017, and required that the letter set forth a date certain (if necessary) for Commissioner Ryder's deposition. <u>See</u> Order dated December 13, 2017.

This Court held a status conference on January 9, 2018. During the conference the Court made the following rulings:

1. <u>With regard to Plaintiffs' request to depose Ryder</u>

   - By January 12, 2018, Plaintiff shall serve the County with a formal interrogatory request for Acting Commissioner Patrick Ryder ("Ryder"). The interrogatory shall contain no more than 5 questions.
   - Defendant must respond within 10 days of receiving the interrogatory.
   - If, after receiving the sworn interrogatory response, Plaintiff still believes it is necessary to depose Ryder, Plaintiff must make a motion to compel. Such motion must be made within two weeks of receiving the sworn interrogatory response.

2. <u>With regard to Plaintiffs' additional discovery demands:</u>

   - Plaintiff has until February 6, 2018 to make a motion to compel all outstanding discovery (including documentary and/or video discovery).
   - Defendant must respond within three weeks of Plaintiffs' motion.
   - There shall be no reply.

3. <u>With regard to expert discovery</u>

   - Plaintiff is the only party who expects to call experts, Plaintiff expects to call 2 experts.
   - Expert reports must be completed by January 30, 2018.
   - All expert discovery must be completed by February 20, 2018.

<u>See</u> Minute Order dated January 9, 2018, DE 76.

On February 2, 2018, Plaintiffs filed a motion seeking to compel the deposition of Ryder. DE 78. Defendants requested, and were granted, an extension of time to respond to Plaintiffs' motion. Defendants' opposition was filed on March 14, 2018. Plaintiffs' motion to compel

discovery was also fully briefed on March 14, 2018. Both motions as they are ripe for decision.

II.     Relevant Background Information

The following facts are taken from Plaintiffs' Amended Complaint ("Am. Compl."), DE 47.

A.  The Agreement

At the outset the Court notes that although B.C.A. Leasing Ltd. and B.C. Benjamin Auto Sales Inc. are both named as Defendants, it appears form the amended complaint that the two entities are not separate, but that B.C.A. Leasing Ltd. was/is doing business as B.C. Benjamin Auto Sales Inc., and Rave Leasing Ltd. Indeed, throughout the amended complaint the three entities are referred to as "BCA." Am. Compl. ¶¶ 8-9. As they are separately named Defendants the Court will refer to B.C.A. Leasing Ltd. and B.C. Benjamin Auto Sales Inc. collectively as the "BCA Defendants".

As stated on the amended complaint, Defendant Vitucci was and is, or held himself out to be president, officer, partner, owner, operator, and/or agent of B.C.A. Leasing Ltd., B.C. Benjamin Auto Sales Inc., and Rave Leasing LTD ("BCA Defendants"). Am. Compl. ¶ 8. At all relevant times, the BCA Defendants were located in Great Neck, New York, and they engaged in leasing high end luxury and exotic automobiles. Am. Compl. ¶ 9.

Although the amended complaint does not set forth the relationship between Brown and Crown, Plaintiffs allege that they entered into a lease agreement with the BCA Defendants and Vitucci for a 2007 Bentley automobile. According to Plaintiff, the terms of the Agreement provided Brown and Crown with the option to purchase the vehicle for $60,000.00. Am. Compl. ¶ 16. Plaintiffs assert that on or about January 25, 2011, Brown personally delivered a cashier's check to Vitucci and the BCA Defendants, in the amount of $12,648.00, to satisfy any amounts

owed up to January 5, 2011. Am. Compl. ¶ 21. It is Plaintiffs' contention that Vitucci and/or the

BCA Defendants wrongfully kept that payment and did not properly apply it to Plaintiffs'

account. Am. Compl. ¶ 24. Plaintiffs further contend that although they were in full compliance

with the terms of the Lease, and received no notification of default, Vitucci filed a false police

report or complaint with Detective Nash and/or the County, by way of Nassau County Police

Department ("NCPD"), alleging that a 2007 Bentley Flying Spur leased to Plaintiffs Brown and

Crown was stolen from his dealership in Great Neck. Am. Compl. ¶ 26. It is also stated by

Plaintiffs that a document referred to as Addendum #38, which sets out terms related to

Plaintiffs' responsibilities upon default, contains forged signatures of Plaintiffs, and that Vitucci

or his representatives are responsible for forging those signatures. Am. Compl. ¶ 29.

### B. Plaintiff Brown is Pulled Over on August 24, 2011

On or about August 24, 2011, at approximately 10:00 A.M., Brown was pulled over by

Officer Nash. Am. Compl. ¶ 33. According to Brown, Nash questioned Brown about an alleged

stolen car and implied that the car Brown was driving was a stolen vehicle. Am. Compl. ¶ 38.

Brown explained that he was no longer in arrears with his lease payments, and Nash advised

Brown that he should speak with his bank. Before parting ways, Nash provided his contact

information to Brown. Am. Compl. ¶ 40. Brown asserts that shortly after he was pulled over, he

contacted the NCPD, and was told that there were no records of his car being reported as stolen.

Am. Compl. ¶ 42. Nevertheless, according to Plaintiffs, Vitucci submitted a deposition statement

to Nash requesting that Brown be arrested for violating an alleged rental agreement. Am. Compl.

¶ 43.

### C. Dispute Between All Points and BCA Leasing and Vitucci

Plaintiffs allege, upon information and belief, that on or about April 3, 2008 Vitucci and

the BCA Defendants transferred all rights under the Agreement to a finance company known as All Points Capital Corp. ("All Points"). Am. Compl. ¶ 17. As Brown believed All Points to be the financer of the BCA Defendants with regard to Brown's leased vehicle, Brown contacted Joseph Heath ("Heath"), assistant Vice-President of All Points, on September 12, 2011. Am. Compl. ¶ 44. Heath is alleged to have informed Brown that there was a legal dispute between All Points and the BCA Defendants and Vitucci. Am. Compl. ¶ 45. Specifically, Brown alleges that Heath informed Brown that Vitucci and the BCA Defendants had defaulted on their credit line with All Points, and that the default included Brown's leased vehicle. Am. Compl. ¶ 46. According to Plaintiffs, Heath additionally stated that he had not received the $12,648.00 check made by Plaintiff, and Heath was not aware that Plaintiffs' vehicle was reported stolen. Am. Compl. ¶¶ 48- 49.

D.  Brown's Arrest on September 27, 2011

Plaintiffs state that on September 19, 2011, Brown faxed Nash a copy of the lease agreement and a copy of the $12,648.00 cashier's check he had given to Vitucci. Am. Compl. ¶ 52. Despite that fax, Detectives Nash and Kenah arrested Brown at his place of work on September 27, 2011. Am. Compl. ¶ 54. Upon his arrest, Brown inquired whether Nash had received the fax, to which, according to Plaintiff, Nash responded that "[he] didn't receive it, but it's possible he may have." Am. Compl. ¶ 58. Brown was thereafter handcuffed and detained for approximately five hours. Brown contends that he was not read his Miranda rights, was denied the right to contact an attorney, as well as requests to use the restroom, and was repeatedly questioned by Nash and Kenah. Am. Compl. ¶ 60-81. Following his detention, Brown was transferred to the Manhasset police precinct, where he was eventually released on $500.00 bail. Am. Compl. ¶ 90. Upon leaving the precinct Brown was given a copy of the arrest documents

and an appearance ticket for "unauthorized use of vehicle." Am. Compl. ¶ 91.

E. Incidents Following the Arrest

Brown was arraigned on October 7, 2011, at which time he was charged with "unauthorized use of a vehicle." Am. Compl. ¶ 92. On December 4, 2011, Brown was stopped by police while driving in Hackensack, New Jersey. Am. Compl. ¶ 93. Brown claims that the Hackensack Police Department informed him that his vehicle was reported stolen. Am. Compl. ¶ 93. He was thereafter arrested and charged with receiving stolen property. Am. Compl. ¶ 100. However, that charge was dismissed upon Vitucci's failure to appear on the court date. Am. Compl. ¶ 102. Thereafter, Plaintiffs' leased vehicle was returned to the custody of Defendants. Plaintiffs claim that despite the return of the vehicle, they have received neither proceeds from the sale of the vehicle, nor reimbursement that may have been due under the Lease. Am. Compl. ¶ 103-104.

F. Plaintiffs' Claims

As noted above Plaintiffs state both state and federal claims. That state claims allege: (1) breach of contract, (2) unjust enrichment, (3) breach of implied covenant of good faith against, (4) fraud (by misrepresentation to police), (5) fraud (by misrepresentation to All Points), and (6) promissory estoppel. Plaintiff Brown states federal claims of discrimination based on race pursuant to Section 1981, violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments pursuant to Section 1983, a Monell claim against the County of Nassau pursuant to Section 1983, a claim of conspiracy pursuant to Section 1985, and, finally, failure to intervene pursuant to Section 1986. The first six counts are stated against only Vitucci and the BCA Defendants, the Section 1981 and 1983 claims are against only Nash and Kenah, the Monell claim is asserted is against the County, and the Section 1985 and 1986 claims are

asserted against all Defendants.

III.    The Two Motions Presently Before the Court

    A.    The Motion to Depose Commissioner Ryder

Although Plaintiffs have styled the motion filed under Docket Entry 78 as "A Motion to Depose Ryder deposition of Ryder," the motion makes virtually no argument as to why the deposition of Ryder is necessary and within the scope of discovery in this matter. Indeed, Plaintiffs' motion essentially states that Ryder failed respond to interrogatories -- presumably those served pursuant to this Court's previous direction.  Plaintiffs argue that Defendants' failure to respond to their interrogatories entitles Plaintiffs to take Ryder's deposition. In the alternative, Plaintiffs seek an order compelling Defendants to respond to the aforementioned interrogatories. DE 78.

Nassau County contends, as it previously argued before this Court, that Ryder is a high ranking government official whose deposition is permissible only if he has relevant information that is unobtainable from other sources, and if the deposition will not detract from his ability to carry out his governmental duties. The County posits that Plaintiffs have failed to meet their burden in establishing that a deposition of Ryder is warranted. The County further argues that Ryder should not be required to answer the interrogatories served upon him. It objects to those interrogatories upon the ground of relevance. As to that objection, the County argues that not a single question posited by Plaintiffs is related to Ryder's investigation of Brown's civilian complaint—the only matter upon which Ryder would have unique personal knowledge.  DE 84. Additionally, the County notes that the number of interrogatories served far exceeds (when counting subparts) the five interrogatory limit previously ordered by this Court in its minute order of January 9, 2018. In its opposition, the County offers to provide an affidavit from Ryder

which will attest to his rank and title from August 2011 through January 2013; whether he has ever met with Vitucci; and a description of his investigation into Brown's complaints of constitutional violations. It is the County's contention that such an affidavit would answer the portions of the interrogatories to which Ryder has unique personal knowledge. The County argues that the Plaintiffs' additional interrogatories are irrelevant as they seek information that is not in the exclusive knowledge or possession of Ryder, and that "answering the interrogatories would be an imposition on the Police Commissioner's time to address." DE 84.

B. The Motion to Compel Discovery

Plaintiffs' motion to compel seeks various relief. In particular, Plaintiffs seek to compel the County Defendants to produce (1) audio and video recordings of his arrest; (2) work records of Defendants Nash and Kenah pertaining to investigations of citizen complaints, compiled by race, gender and age; (3) Early Assessment Case Bureau ("ECAB") materials, and evidence of communication. Plaintiffs also seek to depose a County witness regarding matters specified in plaintiffs' notice of deposition. Additionally, Plaintiffs seek to compel the BCA Defendants and Vitucci to produce responses to Plaintiffs' demands dated May 9, 2017.

The County opposes the motion described above on the grounds, inter alia, of timeliness and relevance.

IV. Legal Principles

a. Scope of Discovery

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure. That Rule has been amended, on several occasions, to reflect evolving judgments as to the proper scope of discovery. Over time, these amendments have been aimed at striking the proper balance between the need for evidence, and the avoidance of undue burden or expense. Rule 26

currently defines the scope of discovery to consist of information that is relevant to the parties'

"claims and defenses."  The discretionary authority to allow discovery of "any matter relevant to

the subject matter involved in the action" has been eliminated. Additionally, the current version

of Rule 26 defines permissible discovery to consist of information that is, in addition to being

relevant "to any party's claim or defense," also "proportional to the needs of the case." Id.

The specific proportionality factors to be assessed when considering the scope of

discovery are:

- The importance of the issues at stake in the litigation;

- The amount in controversy;

- The parties relative access to relevant information;

- The parties' resources;

- The importance of discovery in resolving issues; and

- Whether the burden or expense of the discovery is outweighed by the benefit

Fed. R. Civ. P. 26(b).

Notably absent from the present Rule 26 is the all too familiar, but never correct, iteration

of the permissible scope discovery as including all matter that is "reasonably calculated to lead

to" the discovery of admissible evidence. This language was never intended to define the scope

of discovery, but was intended only to make clear that the discovery is not limited by the concept

of admissibility.  Unfortunately, the "reasonably calculated" language has often been employed

to refer to the actual scope of discovery. Clearing up this misinterpretation, the new Rule

disposes of this language, ending the incorrect, but widely quoted, misinterpretation of the scope

of discovery. The present definition of the scope of discovery continues to refer to admissibility,

but only by stating that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b).

Overarching the interpretation of Rule 26, and indeed all of the Federal Rules of Civil Procedure, is the standard referred to in Rule 1 thereof. That Rule, as amended in December of 2015, requires that the Federal Rules of Civil Procedure "be construed, administered, and employed *by the court and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding. " Fed. R. Civ. P. 1 (emphasis added). <u>See</u> Comment to 2015 Amendment to Rule 1 (noting that "the parties share the responsibility" to employ the rules consistently with the standards of Rule 1, and that "[e]ffective advocacy is consistent with -- and indeed depends upon -- <u>cooperative</u> and <u>proportional</u> use of procedure") (emphasis added).

Judicial involvement has long been recognized as critical to the effective management of discovery. The 2015 amendment to the Federal Rules of Civil Procedure revisits this theme, noting that the amendment "again reflects the need for continuing and close judicial involvement in the cases that do not yield readily to the ideal of effective party management," including that cases where "the parties fall short of effective, cooperative management on their own." Advisory Comm. Notes 2015.

    b. <u>Depositions of High Ranking Officials</u>

High-ranking officials are often saddled with more duties and constraints than other individuals. As such, the party seeking a deposition of a high-ranking official must establish that exceptional circumstances warrant the taking of the deposition. <u>Lederman v. New York City Dep't of Parks & Recreation</u>, 731 F.3d 199, 203 (2d Cir. 2013) (citing <u>United States v. Morgan</u>, 313 U.S. 409 (1941)). To hold otherwise, would likely require such officials to expend an inordinate amount of their limited time addressing ongoing litigation matters. <u>Moriah v. Bank of</u>

China Ltd., 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014) (citations omitted).  The Second Circuit has found that exceptional circumstances exist if "'the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.'" Lederman, 731 F.3d at 203 (citing Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007) and In re United States (Holder), 197 F.3d 310, 316 (8th Cir. 1999)). Indeed, in this Circuit, a deposition of a high-ranking government official may only be taken if "(1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source; and (2) the deposition would not significantly interfere with the ability of the official to perform his or her governmental duties." Boudouris v. Cty. of Nassau, 2016 WL 4288645 (E.D.N.Y. 2016) (quoting Victory v. Pataki, 2008 WL 4500202, at *2 (W.D.N.Y. 2008) (internal quotation marks omitted)).

V.      DISPOSITION OF THE MOTION

I.      As to Plaintiffs' Motion to Compel the Deposition of Ryder

Plaintiffs' motion to depose Ryder is denied. That is because Plaintiffs have failed to comply with this Court's order dated January 9, 2018. Indeed, as stated above, this Court directed Plaintiffs to serve the County with a formal interrogatory request for Ryder. The Court specifically instructed Plaintiffs that the interrogatory shall contain no more than five questions. By that same order, the Court instructed that if after receiving sworn interrogatory responses, Plaintiffs still believed it necessary to depose Ryder, they were to make a motion to compel that deposition. See DE 76. Despite the Court's clear instruction, Plaintiffs have moved to compel Ryder's deposition prior to receiving his interrogatory responses. Although a dispute exists with regard to the interrogatory responses, the appropriate action would have been for Plaintiffs to move to compel the interrogatory responses only. Even if the Court were to entertain Plaintiffs'

present motion to compel the deposition of Ryder, that motion would fail because Plaintiffs have made no showing that exceptional circumstances warrant the deposition. For the foregoing reasons, the Court denies Plaintiffs' motion to compel the deposition of Ryder.

Nonetheless, in the interest of judicial economy and in an effort to move this matter forward, the Court will construe Plaintiffs' motion to depose Ryder as a motion to compel Defendants to respond to Plaintiffs' interrogatories. By way of background, this Court held a conference on January 9, 2018. During the conference, the parties discussed Ryder's involvement with the case. The County stated that its position was that Ryder had no personal knowledge regarding Mr. Brown's arrest, but may have some knowledge of the civilian complaint filed by Mr. Brown. FTR Tape from January 9, 2018 at 2:48:36. The Court instructed Plaintiffs to pose no more than five clear questions to Defendant. Specifically, the Court directed Plaintiffs to ask Ryder questions regarding Ryder's involvement with Plaintiffs. Indeed, this Court listed examples of the types of questions that Plaintiffs should ask, such inquiring as to his title, his knowledge (if any) of Mr. Brown's arrest/pre arrest investigation, his knowledge (if any) of the civilian complaint, and whether was he present and on duty on a specific day. See FTR Tape from January 9, 2018 at 2:53:36. Instead, of complying with this Court's instructions, the Plaintiffs served Defendants with the following interrogatores:

1. State the titles all offices under which you ever performed work with or for defendant, County of Nassau ("County Defendant"), whether compensated or uncompensated. For each named office, please include:
   a. the name of the specific department or unit of the County Defendant, within which you the
   b. office was located;
   c. and physical address of the department or unit within which the office;
   d. the month and year you started and ended occupying that office;
   e. Your immediate supervisors, if any.
2. State and described any authority you possessed to supervise County Defendant employees and assign task to County Defendant employees during the period from May 2011 through September 30, 2011, and include:

      a. the names of the documents which granted you such authority;

      b. An explanation of any authority you had to assign tasks to or supervisor former Detectives Glen T. Kenah and Manuel Nash;

3. With regard to the Nassau County Police Department - 006 designated Case Report # 211CR0068851 ("Claim"), a copy of whose supporting deposition is included herein for your convenience, please describe your involvement, observations, and other knowledge, if any, in:

      a. the plan and decision to file a supporting deposition and deposition to commence the claim;

      b. the filing of the deposition and supporting deposition commencing the Claim;

      c. the investigation of the claim by Nassau County Police Department ("NCPD") and/or its employees;

      d. the decision of NCPD and/or its employees, to arrest the Linford A. Brown a/k/a Linford A. Brown Jr..

      e. the execution of the arrest and detention of Linford A. Brown by NCPD arrest and/or its employees:

Please include any dates; names and titles of individuals, things, and places: actions performed by individuals; statements made by individuals; length of time taken to perform tasks; and manner in which tasks were performed. For each action you took, please state the name of the documents and or other objects which granted you the authority to take that action, and describe the exact location in the document or on the object which sets forth the grant of authority.

4. List in chronological order, all instances of communications between you and defendants B.C.A . Leasing LTD, B.C. Benjamin Auto Sales, Inc. and Christopher Vitucci, including their officers, agents and employees. For each instance of communication, please:

      a. State whether the communication was face-to-face.by telephone, by written communication, through a third person, or by some other means. If through a third party please state the name, employment position, and name of employer of that person at the time of the communication.

      b. State the date and time of day of your receipt or instigation of the communication, to the best of your recollection;

      c. explain whether the communication occurred while you were on duty with the County of Nassau;

      d. the purpose of the communication, if any;

      e. the content of the communication;

      f. actions taken during each instance of communication.

5. Describe any plan or decision and action taken, to question Linford A. Brown about individuals' named or known as lgal and Coby Mor during his arrest and detention on September 27, 2011. Include any actions taken in furtherance of that plan or decision, the dates each action was taken, the names of the individuals directly or indirectly involved in implementing the plan, and an explanation of the plan.

See DE 78-3.

With regard to the interrogatories above, it is clear to the Court that Plaintiffs have exceeded the number of questions permitted by this Court's order. Although the interrogatories are numbered 1-5, each one has multiple subparts. As Plaintiffs' interrogatories are not consistent with this Court's directive, Plaintiffs' motion to compel Defendants to respond to those interrogatories is denied. However, this Court will permit Plaintiffs to serve Defendants with interrogatories that adhere to this Court's prior directive. As such, this Court re-states its prior order herein. That is, Plaintiffs may serve Ryder with an interrogatory request composed of five (5) clear questions regarding his involvement with Plaintiffs. Such interrogatories must be served upon Defendants within seven (7) days of this order. Defendants must serve responses within ten (10) days of receiving Plaintiffs' interrogatories. That response must also include Defendants' position as to whether, in light of the responses, Defendants will agree to the deposition of Ryder, and any terms to be imposed with respect thereto. If, after review of Defendants' response, the parties cannot come to agreement with respect to the taking of Ryder's deposition, Plaintiffs may move to compel that deposition. Such motion must be made within two weeks of Plaintiffs' receipt of Defendants' responses to Plaintiffs' interrogatories. Failure to make a timely motion will waive any further request to depose Ryder.

II.    As to Plaintiffs' Motion to Compel Discovery

As noted above, Plaintiffs seeks to compel the County Defendants to produce (1) audio and video recordings of his arrest; (2) work records of Defendants Nash and Kenah pertaining to the investigation of citizen complaints, compiled by race, gender and age; (3) ECAB materials and evidence of communication. They also seek to compel the deposition of a County 30(b)(6) witness regarding matters specified in plaintiffs' notice of deposition and matters relevant to the allegations in the plaintiffs' First Amended Complaint. Finally, Plaintiffs seeks to compel BCA

Leasing and Vitucci to produce responses to Plaintiffs' demands dated May 9, 2017, and demands made thereafter. The Court addresses each request in turn.

1.  As to Audio and Video Recordings

Plaintiffs seek unredacted and unedited audio and video and recordings of Plaintiff Brown that were taken on September 27, 2011. DE 81-1 at 4. Plaintiffs argue that this information is necessary as it supports their federal claims. Plaintiffs assert that it timely requested the evidence sought as part of Request Number 4 of their initial request for documents. That document request is as follows, "Provide copies of all documents Defendants created and/or maintained in their custody and control regarding Plaintiff." See DE 82-1. The County objected to this request as overly broad and vague, and Plaintiffs did not challenge that objection. Three years later, Plaintiffs requested audio and video recordings. DE 83 at 4; DE 82-1 at 5. As the County's prior objections were never challenged, the County argues that Plaintiffs have waived discovery of the material now sought, and that Plaintiffs' renewed request should be denied as untimely. Despite its opposition, the County states, upon information and belief, that there are no audio or video recordings of Brown's arrest.

Although Plaintiffs' requests may indeed be untimely, the Court has discretion to excuse such delay. See Carl v. Edwards, 2017 WL 4271443, at *6 (E.D.N.Y. 2017) (collecting cases). Moreover, it appears that the County has already performed a search with regard to any responsive recordings. Audio and video recordings surrounding Brown's arrest – if they exist – are both relevant and proportional to the needs of this case. Therefore, the County is directed to turn over any audio and video recordings that exist of Brown's arrest. In the event that no responsive materials exist, the County must produce to Plaintiffs a sworn statement, in the form of an interrogatory response, setting forth that fact. This production/response must be made by

the County by June 11, 2018.

        2.   <u>As to the Work Records of Defendants Nash and Kenah</u>

Plaintiffs seek the following "work records":

> (b) work reports, work records and other NCPD-related work products of
> NASH and KENAH regarding their: interactions with members of the public;
> investigation of complaints; patrol experiences; performance of arrests, and
> post-arrest processing activities, for the period beginning January 1, 2006
> through December 31, 2011, ensuring that no redactions thereto are performed
> with regard: to the race, ethnic identity, age and gender of the members of the
> public encountered; the names of the officer(s) involved; the subject-matter of
> the record; and the disposition/resolution of such encounter/incident; and
> describing all information redacted therefrom;
>
> (c) [] records of complaints of members of the public filed with NCPD, and the
> resolution thereof, for the period from January 1, 2006 to December 31, 2011,
> ensuring that no redactions thereto are performed with regard to the: date of
> complaint; race, ethnic identity, age and gender of the citizens complained of; the
> names of the investigating officers; and the subject matter of the complaint."

<u>See</u> DE 81-1 at 4.

Plaintiffs argue that these documents would enable them to evaluate whether there is a

pattern or practice of discrimination, that Plaintiffs have no other means of obtaining the

information, and such documents would enable Plaintiffs to meet their burden in establishing that

Brown received treatment by the County of Nassau that was different from similarly situated

non-minority individuals. 81-1 at 11.

The County contends that it has been working with the Police Department's Legal

Bureau and IT Department to ascertain whether the information sought can be gathered. In

particular, the County asserts that it knows of no specific existing data compilation of the items

Plaintiffs seek, and that it therefore conducted a manual search for responsive documents. DE 83

at 5-6. Based upon the search, the County was able to search through non-sealed records and

assess the race of arrestees, as well as the race of civilians named in civilian complaints.

The Court understands that Plaintiffs are seeking information to support their claims of differential treatment based upon race. However, the information sought under paragraphs (b) and (c) are overly broad and are not proportional to the needs of the case. For example, Plaintiffs have not made a showing as to how their request under paragraph (b) for records regarding "patrol experiences" and "interactions with members of the public" is narrowly tailored to address the needs of this case. Additionally, Plaintiffs have failed to show how information regarding age, gender, and the names of other officers involved is relevant to the instant action. As Brown claims that he was wrongfully arrested based upon false allegations that he stole a vehicle, DE 47 ¶¶ 26, 43, 54, the court finds that arrests made by Nash and/or Kenah for claims involving stolen property are both relevant and proportional to the needs of this case. Additionally, as Brown claims that Nash and Kenah failed to properly investigate the claim against Brown because of his race, DE 47 ¶ 150, the Court finds that civilian complaints which contain allegations of stolen property and were investigated by Nash and/or Kenah are relevant and proportional to Plaintiffs' claims. However, any requests for all arrests and complaints spanning five years is overly broad given the needs of the case. Accordingly, the Court limits such discovery to include only those arrests made by Nash and Kenah pursuant to claims of stolen property and stolen vehicles, and only those civilian complaints alleging crimes of stolen property which were investigated by Nash and/or Kenah. The County does not claim that production of such records would be overly burdensome. In contrast, as stated above, the County was able to perform a manual search of non-sealed records. The County is therefore directed to furnish Plaintiffs with a list of the arrests for stolen property (including stolen vehicles) made by Nash and Kenah between January 1, 2006 and December 31, 2011. The list shall identify the race of the person who reported the property stolen, the race of the individual arrested, and the

reason for the arrest. The County shall further furnish Plaintiff with the non-sealed civilian complaints filed with the NCPD between those dates. The race of the complainant, the race of the party being complained of, and the subject matter of the complaint shall not be redacted. To the extent that Plaintiffs seek information regarding sealed documents, Plaintiffs must file a motion to unseal by June 11, 2018. Such motion shall cite to relevant authority in support of their position. The Court holds that the disposition/resolution of such arrests and civilian complaints is relevant. To the extent that the County can produce such documents it must do so by June 11, 2018. If the County does not have the ability to produce by that date, it shall produce a sworn statement as to why it cannot produce the information.

The Court makes clear that at this time that such discovery shall be limited to arrests of and complaints investigated by Detectives Nash and Kenah. Although Plaintiffs claim that broader discovery is warranted to support their Monell claim, such claim is dependent upon a showing that Plaintiffs were subjected to a constitutional violation by the officers involved. As such, at this juncture, the Defendants are directed to turn over only those work records related to Nash and Kenah.

Plaintiffs additionally request that the Court compel the County to respond requests for production of documents related to conversations between Pamela Pincus ("Pincus"), an employee of Nassau County, and Defendant Nash, DE 81-1 at 7, Ex. F. According to Plaintiffs, they previously requested such documents during the deposition of Pincus. DE 81-1 at 7-8, Ex. F. However, as made clear by Plaintiffs, the time for such response has not yet arrived. As such, the Court denies this request as premature.

      3.   As to Early Assessment Case Bureau ("ECAB") Materials

Plaintiffs seek the following ECAB materials:

All documents- including inquiry reports- in the possession of the COUNTY DEFENDANT, including the Early Case Assessment Bureau ("ECAB"), concerning or relating to communications between Manuel Nash and Early Case Assessment Bureau members, employees, and volunteers, including Pamela Kelly-Pinchus, regarding Nassau County Police Department -006 Case Report # 211CR0006885 1 and its contents.

Plaintiffs contend that the materials sought are necessary to establish that the Defendants lacked probable cause to arrest Brown. DE 81-1 at 12. For its part, the County avers that the requests are inappropriate because Plaintiff has made no good faith effort to obtain answers to these demands, and because the demands are untimely. However, as the County agrees to formally respond to Plaintiffs' demands, the County shall do so within thirty (30) days of this order. DE 83 at 6.

### 4. As to the Deposition of the County of Nassau

Plaintiffs ask that the County be compelled "to testify regarding matters specified in plaintiffs' notice of deposition the County Defendant and relevant to the allegations in the plaintiffs' First Amended Complaint." DE 81-1 at 5. Specifically, Plaintiffs seek to depose the County with respect to, inter alia, information relating to the relationship between the County of Nassau and the NCPD; various communication procedures; interactions of detectives Kenah and Nash with Linford Brown; information regarding particular laws that Kenah and Nash utilized in their interactions with Brown; and other various topics. See Ex. H.

The Country argues that Plaintiff is proceeding on a flawed and baseless theory that Plaintiff was arrested because he was a 'young black man' driving an expensive car. DE 83. The Country asserts that Plaintiffs' allegations fail to support an inference that Brown was targeted based upon his race. In support of this argument, the County highlights the fact that it was Vitucci (a civilian) that lodged a civilian complaint, issued a supporting deposition, and signed the charging instrument as a complaining witness. DE 83 at 7. Thus, the County argues that

deposing a County witness based upon such claim is irrelevant. The County further argues that its witness produced pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure should not be required to answer questions regarding a relationship between the NCPD and the County of Nassau and police procedures on the ground that such questions are nothing more than a fishing expedition. The County posits that Plaintiffs have failed to establish a reasonable basis for its "failure to train and supervise" claim and, therefore, discovery to support such claim should not be permitted. DE 83 at 7.

The Court notes that Defendants' position is dependent upon adoption of its version of the facts and a finding that Plaintiffs' claims are meritless. The scope of relevant discovery is not so limited, and the Court declines to limit relevance to only one party's position. Instead, the scope of discovery includes information relevant to both parties' claims and defenses. However, topics related to the NCPD and the County of Nassau and police procedures although relevant to Plaintiffs' Monell claim, are irrelevant if a constitutional violation is not found. Thus, in an effort to streamline the discovery process, Plaintiffs shall depose Nash and Kenah prior to deposing the County's 30(b)(6) witness. By doing so, the parties will be in a better position to know whether seeking information related to the County and police procedures is proportional to the needs of this case. Upon taking the depositions of Nash and Kenah, Plaintiffs will have thirty days to serve a detailed Rule 30(b)(6) notice of deposition, and to confer in good faith with the County as to what topics Plaintiffs seek to inquire of the County's witness. Accordingly, the Court denies Plaintiffs' motion to compel the deposition of the County's Rule 30(b)(6) witness on the broad range of topics set forth by Plaintiffs, i.e., with respect to the relationship between the NCPD and the County of Nassau and police procedures. Such denial is without prejudice to renewal within 30 days after completing the depositions of Detectives Nash and Kenah.

5. <u>As to Compelling BCA Leasing and Vitucci to Produce Responses</u>

Plaintiffs seek to compel Vitucci and the BCA Defendants to produce:

a. Responses to Document Demands dated May 9, 2017, and previously served on their prior counsel, Naidich Wurman. These requests included all documents intended to be used in defense of the lawsuit, documents relating to any internal investigations, names of the owners and shareholders of BCA leasing corp. and copies of all documents regarding a certain identified Bentley vehicle.

b. Unredacted, unedited, documents concerning the sale of the 2007 Bentley Flying Spur by from All Points Capital Corp. to B.C. Benjamin Auto Sales during or subsequent to the year 2012, as referenced the Deposition of Christopher Vitucci speaking on behalf of B.C.A Leasing Ltd on page 65;

c. Unredacted, unedited, documents concerning a sale of the 2007 Bentley Flying Spur by from All Points Capital Corp. to B.C. Benjamin Auto Sales during or subsequent to the year 2012, as referenced at pages 64 through 65 of the transcript of the Examination Before Trial of Christopher Vitucci and B.C.A Leasing Ltd held on December 11, 2017;

d. All unredacted, unedited documents concerning B.C.A. Leasing Ltd.'s authorization to Christopher Vitucci to testify on the behalf of B.C.A. Leasing Ltd. at the Deposition/Examination Before Trial of B.C.A. leasing Ltd. held on December 11, 2018.

DE 81-1.

Neither Vitucci nor the BCA Defendants have responded to Plaintiffs' motion to compel. However, Plaintiffs make clear that at the time they filed the instant motion, the time for Vitucci and the BCA Defendants to respond to requests "b" through "d" was "far from run." DE 81-1 at 8-9. Plaintiffs nevertheless seeks the Court to rule "as to their relevancy to the Complaint," and for the Court to issue an order for their production. DE 81-1 at 9. The Court declines to do so. That is because counsel must confer regarding discovery disputes prior to seeking the Court's intervention. Thus, if Defendants object to Plaintiffs' request, counsel shall confer and seek the Court's intervention only after making a good faith effort to resolve such disputes. <u>See</u> Fed. R. Civ. P. 37(a)(1) (a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action"). As Defendants' time to respond time

had not run at the time of the making of this motion, Plaintiffs' request to compel discovery is premature.

However, this Court directs Defendants and Vitucci to respond to the May 9, 2017 requests for production. Such interrogatories were served upon Defendants over a year ago, and Defendants have not opposed Plaintiffs' motion. Accordingly, Vitucci and the BCA Defendants have until June 11, 2018 to respond to Plaintiffs' interrogatories dated May 9, 2017.

Conclusion

The Plaintiffs' motions to compel the deposition of Commissioner Ryder, herein Docket No. 78, is denied. Additionally, Plaintiffs' request to compel the County to answer the Plaintiffs' interrogatories is denied. However, as stated above, Plaintiff may serve the County with five (5) interrogatory questions consistent with this order. Such interrogatories must be served upon Defendants within seven (7) days of this order. Defendants must serve responses to the five interrogatories as well as their position as to the need for Ryder's deposition within ten (10) days of receiving Plaintiffs' interrogatories. Plaintiffs shall thereafter have no more than two weeks in which to move to compel Ryder's deposition.

The Plaintiffs' motion to compel discovery, herein Docket No. 81, is decided as follows:

(1) The County is directed to turn over audio and video recordings or a sworn statement, in the form of an interrogatory response, that such recordings do not exist. Such production shall be made by June 11, 2018.

(2) The County is directed to furnish Plaintiffs with a list of the arrests for stolen property (including stolen vehicles) made by Nash and Kenah between January 1, 2006 and December 31, 2011. The list shall identify the race of the person who reported the property stolen, the race of the individual arrested, and the reason for the arrest. The

County shall further furnish Plaintiff with the non-sealed civilian complaints filed with the NCPD between those dates. The race of the complainant, the race of the party being complained of, and the subject matter of the complaint shall not be redacted. To the extent that Plaintiffs seek information regarding sealed documents, Plaintiffs must file a motion to unseal by June 11, 2018. Such motion shall cite to relevant authority in support of their position. To the extent that the County can produce documents related to the disposition/resolution of the above arrests and complaints it must do so by June 11, 2018. If the County does not have the ability to produce by that date, it shall produce a sworn statement as to why it cannot produce the information.

(3) The County shall respond to Plaintiffs' request for EACB materials within thirty (30) days of this order.

(4) The Court denies Plaintiffs' motion to depose the County's 30(b)(6) witness on topics related to the relationship between the NCPD and the County of Nassau and police procedures. Such denial is without prejudice to renewal within 30 days after completing the depositions of Detectives Nash and Kenah.

(5) By June 11, 2018, Defendants Vitucci and the BCA Defendants must respond to Plaintiffs' May 9, 2017 interrogatories.

(6) In all other aspects, the motion is denied.


Dated: May 21, 2018
Central Islip, New York
                                                  **SO ORDERED:**


                                                  _/s/ Anne Y. Shields_____
                                                  Anne Y. Shields
                                                  United States Magistrate Judge