UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LINFORD A. BROWN, Jr. and CROWN
ACQUISTION HOLDING CORP.,

                              Plaintiffs,                    **REPORT AND**
                                                      **RECOMMENDATION**

         -against-                       CV 14-5034 (DRH)(AYS)

CHRISTOPHER H. VITUCCI, B.C.A. LEASING,
LTD., B.C. BENJAMIN AUTO SALES, INC.,
MANUEL F. NASH, GLEN T. KENAH, AND
COUNTY OF NASSAU,

                              Defendants.
------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       This is a civil rights and contractual action arising out of the leasing of an automobile by

Plaintiffs, for which they allegedly failed to make payments. Before the Court, on referral from

the Honorable Denis R. Hurley, are separate motions for summary judgment by each set of

Defendants, as well as Plaintiff's cross-motion for partial summary judgment, pursuant to

Federal Rule of Civil Procedure 56. For the following reasons, this Court respectfully

recommends that all Defendants' motions be granted and that Plaintiff's motion be denied.

FACTUAL BACKGROUND

I.     Basis of Facts Recited Herein

       The relevant facts, as set forth below, are taken from Defendants' Local Civil Rule 56.1

Statements of undisputed material facts and those portions of Plaintiffs' Local Civil Rule 56.1

Statement that are not disputed by Defendants, as well as the evidence submitted by the parties in

support of their individual motions. As noted by all Defendants, Plaintiffs failed to file a counter-

statement to each of their 56.1 Statements, as required by Local Civil Rule 56.1(b). Pursuant to

Local Civil Rule 56.1, where the party opposing summary judgment fails to file the required

1

Local Civil Rule 56.1 counter-statement, "[e]ach numbered paragraph in the statement of material facts required to be served by the moving party will be deemed admitted for purposes of the motion [for summary judgment] unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1(c). Defendants each complied with this requirement by filing a counter-statement to Plaintiffs' Local Civil Rule 56. Statement.

Plaintiffs address their failure to file a counter-statement in their Reply Memorandum of Law, asserting that since they are moving separately for summary judgment, "such a requirement is not applicable." (Pl. Reply Mem. of Law 4.) According to Plaintiffs, their statement of facts "adequately addresses each of the defendants own statements" and "responding specifically to each defendant's statement . . . would have been cumbersome, unduly burdensome and would have resulted in repetitiveness . . . ." (Id.) Not surprisingly, Plaintiffs do not cite to any case law to support their position. Nor is the Court aware of any. The requirement to file a Rule 56.1 counter-statement in opposition to summary judgment is very clearly set forth in the Local Civil Rules. Compliance with Local Civil Rule Rule 56.1 is the opposite of "cumbersome." Instead, it allows the Court to easily focus on statements to identify issues of fact. Apparently finding compliance with the local rule too burdensome, Plaintiffs have elected to ignore their responsibilities to comply with this requirement.

The Court finds Defendants' Rule 56.1 Statements to be proper since they contain citations to admissible evidence to support each asserted material fact, see Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003), and, based upon Plaintiffs' failure to comply with Local Civil Rule 56.1, deems the facts set forth in Defendants' 56.1 Statements admitted. See Nassar Family Irrevocable Trust v. United States, Nos. 13 Civ. 5680, 13 Civ. 8174, 2016 WL

5793737, at *1 n.2 (S.D.N.Y. Sept. 30, 2016) ("Because Nassar failed to file a response [to Defendant's Rule 56.1 Statement], all facts set forth in the Government's statement are deemed admitted in deciding the instant motion."); Luizzi v. Pro Transport Inc., No. 02 CV 5388, 2009 WL 252076, at *2 (E.D.N.Y. Feb. 2, 2009) ("Where the party opposing a motion for summary judgment fails to submit a proper counter-statement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts.").

II.    Relevant Facts

On or about April 3, 2008, Plaintiffs, Linford Brown ("Brown") and Crown Acquisition Holding Corp. ("Crown") (collectively, "Plaintiffs") – a business incorporated under the laws of the State of New York that was subsequently dissolved by proclamation in 2004, of which Brown was the principal shareholder and sole owner – entered into a motor vehicle lease agreement (the "Lease Agreement") with Defendant B.C.A. Leasing Ltd. ("BCA") for a 2007 Bentley Flying Spur (the "Bentley"), with monthly payments in the amount of $2,108.98. (Def. BCA and Christopher Vittuci's Local Civ. R. 56.1 Statement ("BCA 56.1") ¶ 1; Def. B.C. Benjamin Auto Sales, Inc.'s Local Civ. R. 56.1 Statement ("BC Benjamin 56.1") ¶ 1.; Def. County of Nassau, Manuel Nash and Glen Kenah's Local Civ. R. 56.1 Statement ("County Def. 56.1") ¶ 2; Pl. Local Civ. R. 56.1 Statement ("Pl. 56.1"), ¶¶ 2-3, 18.)) BCA obtained the Bentley from Defendant B.C. Benjamin Auto Sales, Inc. ("BC Benjamin"), which had purchased it from an unrelated third party. (BC Benjamin 56.1 ¶ 2; Pl. 56.1 ¶ 19.) At the time the parties entered into the Leasing Agreement, Defendant Christopher Vitucci ("Vitucci") was the majority owner of both BCA and BC Benjamin; however, the two companies were separate legal entities. (Pl.

Local Civ. R. 56.1 Statement ("Pl. 56.1"), p. 2 ¶ 4; BC Benjamin 56.1 ¶ 4; County Def. 56.1 ¶ 3.)[1] BCA subsequently assigned the Lease Agreement to All Points Capital Corp. ("APCC"), whereupon BCA was named on the Bentley's title but APCC held a lien. (BCA 56.1 ¶¶ 2-3; BC Benjamin 56.1 ¶ 5; County Def. 56.1 ¶ 4; Pl. 56.1 ¶ 22.) Payments for the Bentley were remitted by Plaintiffs to BCA and/or Vitucci. (County Def. 56.1 ¶ 7.)

By letter dated December 22, 2010, APCC informed Plaintiffs that they were past due in their lease payments, sales tax and late charges for the months of August, September, October, November, and December 2010, for a total amount due and owing of $12,469.78 as of that date, with the potential for acceleration. (BCA 56.1 ¶ 5.) On or about January 25, 2011, Plaintiffs delivered a check to BCA in the amount of $12,648.00. (Id. ¶ 6; Pl. 56.1 ¶ 25.) In or about February 2011, BCA delivered to APCC payment on behalf of Plaintiffs for the Bentley in the amount of $11,632.80. (BCA 56.1 ¶ 7.)

APCC repeatedly attempted to contact Plaintiffs via certified or registered mail addressed to Brown to obtain payments for the Bentley after February 2011. (Id. ¶ 8; County Def. 56.1 ¶ 8.) Among the letters sent to Plaintiffs was a June 9, 2011 letter with a Conversion Worksheet, which stated that the matter would be reported the following week to "secure [the] collateral." (County Def. 56.1 ¶ 9; BCA 56.1 ¶ 9.) By letter dated August 16, 2011, APCC directed that all payments for the Bentley should be made directly to APCC and listed the "Next Due" payment as February 5, 2011, with only thirty-three payments having been made. (BCA 56.1 ¶ 10.) On September 19, 2011, APCC again wrote to Plaintiffs, advising that it had not received monthly

---

[1] Plaintiff's Local Civil Rule 56.1 Statement is misnumbered to the extent that the paragraphs are numbered 1-4 and then begin again on page 2 with the number 1, whereupon they continue in the correct order. The citation above is to the second Paragraph 4 that appears on page 2 of the submission.

lease payments for February through September 2011, totaling $19,613.54 due and owing, and advised Plaintiffs that it was accelerating the lease balance due to demand $115,466.20. (Id. ¶ 11.) All of the letters sent to Plaintiffs were returned, unopened, bearing a notation indicating that the letters went unclaimed. (County Def. 56.1 ¶ 10.)

In or about August 2011, Vitucci lodged a complaint with the Nassau County Police Department for Brown's unauthorized use of the Bentley. (BCA 56.1 ¶¶ 12-13; BC Benjamin 56.1 ¶ 9; County Def. 56.1 ¶ 12; Pl. 56.1 ¶ 33.) The case was assigned to Defendant Detective Manuel Nash ("Nash"). (County Def. 56.1 ¶ 13; Pl. 56.1 ¶ 33.) Nash spoke with Vitucci about his complaint, during which Vitucci advised Nash that Brown was delinquent in his payments for the Bentley, that efforts to contact Brown were unsuccessful, and that Brown was no longer authorized to use the vehicle. (County Def. 56.1 ¶ 14.)

Nash spoke with Brown on or about August 24, 2011. (Id. ¶ 15; Pl. 56.1 ¶¶ 45, 49.) During that conversation, Brown represented to Nash that he either leased or owned the Bentley and that he was current on all payments. (County Def. 56.1 ¶ 16; Pl. 56.1 ¶ 50.) Nash advised Brown that he needed to contact Vitucci to resolve the matter to avoid it becoming a criminal proceeding. (County Def. 56.1 ¶ 17; Pl. 56.1 ¶ 51.) Thereafter, Brown, or someone acting on his behalf, faxed a copy of the front of a check dated January 25, 2011, in the amount of $12,648.00, payable to BCA Leasing, to the Nassau County Police Department. (County Def. 56.1 ¶ 18; Pl. 56.1 ¶ 61.)

On or about September 7, 2011, Vitucci signed a supporting deposition attesting to the fact that Brown was in default on the Bentley's payments since January 2011. (County Def. 56.1 ¶ 21; Pl. 56.1 ¶ 38.) The signed deposition stated that efforts to contact Brown were unsuccessful, as were efforts to repossess the Bentley. (County Def. 56.1 ¶ 21.) That same day,

Vitucci also signed a supporting deposition for Brown's unauthorized use of the Bentley. (Id. ¶ 22; BCA 56.1 ¶ 12; Pl. 56.1 ¶ 39.) Vitucci requested that Brown be arrested and signed the accusatory instrument. (County Def. 56.1 ¶ 23.)

On September 27, 2011, Nash and Defendant Detective Glen Kenah ("Kenah") drove to Brown's business address in Melville, New York, with the intent of placing him under arrest. (Id. ¶ 24.) Nash and Kenah observed Brown driving into the parking lot of a nearby office building, approached Brown, and placed him under arrest for unauthorized use of a motor vehicle. (Id. ¶¶ 25-26; BCA 56.1 ¶ 14; BC Benjamin 56.1 ¶ 11; Pl. 56.1 ¶¶ 64, 72.) Brown was transported to the nearest Nassau County precinct – the Seventh Precinct, located in Massapequa, New York – for processing, where he was fingerprinted, photographed, and handcuffed to a desk. (Id. ¶ 29; Pl. 56.1 ¶ 87.) While at the Massapequa precinct, Brown spoke with his attorney. (County Def. 56.1 ¶ 31.) Brown was then transported to the Sixth Precinct to complete the arrest processing, since that is the precinct with jurisdiction over Great Neck, New York – where BCA is located. (Id. ¶ 32.)

Bail was provided for Brown and he was released from the Sixth Precinct on a Desk Appearance Ticket the same day he was arrested. (Id. ¶ 33; Pl. 56.1 ¶¶ 115, 117.) On October 7, 2011, Brown was arraigned in Nassau County District Court and charged with one count of unauthorized use of a vehicle in the third-degree, pursuant to New York Penal Law Section 165.05(3). (Pl. 56.1 ¶ 120.)

On December 4, 2011, Brown was stopped by officers of the Hackensack Police Department while driving the Bentley in Hackensack, New Jersey, and advised that the Bentley had been reported stolen. (Pl. 56.1 ¶ 124.) Brown informed the officers that he had the right to possession of the Bentley. (Id. ¶ 125.) After detaining Brown for more than one hour, the

Hackensack Police Department officers seized the Bentley and arrested Brown. (Id. ¶¶ 127-28.) Brown was charged with theft and bail was posted at $15,000.00 (Id. ¶ 130.) The New Jersey charges against Brown were dismissed in 2012. (Id. ¶ 133.)

Brown's bail was forfeited in his New York criminal action on January 14, 2013, when he failed to appear for a scheduled court appearance in Nassau County District Court. (County Def. 56.1 ¶ 34.) On or about January 22, 2013, the criminal proceedings against Brown concluded when he accepted an Adjournment in Contemplation of Dismissal ("ACOD"), the terms of which Brown negotiated with the Nassau County District Court Judge. (Id. ¶ 35; BCA 56.1 ¶ 15; BC Benjamin 56.1 ¶ 12; Pl. 56.1 ¶ 146.)

By Summons and Verified Complaint dated November 3, 2011, APCC brought suit against Plaintiffs in New York State Court, on the grounds that they had defaulted under the terms of the Bentley's Lease Agreement. (BCA 56.1 ¶ 18; BC Benjamin 56.1 ¶ 6; Pl. 56.1 ¶ 137.). On June 14, 2012, APCC obtained a default judgment against Plaintiffs for $122,333.80. (BC Benjamin 56.1 ¶ 6; BCA 56.1 ¶ 18; Pl. 56.1 ¶ 138.) By letter dated July 10, 2013, APCC provided Plaintiffs with notice of the auction and sale of the Bentley. (BCA 56.1 ¶ 19.) APCC received all proceeds from the sale of the Bentley. (Id. ¶ 20.)

Plaintiffs commenced the within action on August 25, 2014. (Compl., Docket Entry ("DE") [1].) An Amended Complaint was filed on February 22, 2017, asserting eleven causes of action: (1) breach of contract (against BCA, Vitucci and BC Benjamin); (2) unjust enrichment (against BCA, Vitucci and BC Benjamin); (3) breach of the implied covenant of good faith and fair dealing (against BCA, Vitucci and BC Benjamin); (4) fraud based on misrepresentations made to the County Defendants and the County of Hackensack, New Jersey (against BCA, Vitucci and BC Benjamin); (5) fraud based on misrepresentations made to APCC (against BCA,

Vitucci and BC Benjamin); (6) promissory estoppel (against BCA, Vitucci and BC Benjamin);

(7) race discrimination, in violation of 42 U.S.C. Section 1981 ("Section 1981") (against Nash

and Kenah); (8) false arrest, unreasonable search and seizure, and deprivation of equal protection

and due process rights, in violation of 42 U.S.C. Section 1983 ("Section 1983) (against Nash and

Kenah); (9) municipal liability, pursuant to Section 1983 (against the County of Nassau); (10)

conspiracy, in violation of 42 U.S.C. Section 1985 ("Section 1985") (against all Defendants);

and, (11) violation of Section 42 U.S.C. Section 1986 ("Section 1986") (against all Defendants).

Upon the completion of discovery, all Defendants moved for summary judgment with respect to

all causes of action alleged against them. (DE [131], [132], [135].) Plaintiffs oppose Defendants'

motions and, in response, cross-move for summary judgment with respect to the Second, Third,

and the Seventh Causes of Action.[2] (DE [136].)

DISCUSSION

I.    <u>Legal Standard</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden

is on the moving party to establish the lack of any factual issues. See <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 323 (1986). The very language of this standard dictates that an otherwise properly

supported motion for summary judgment will not be defeated because of the mere existence of

some alleged factual dispute between the parties. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

---

[2] Th Court notes that while almost every point heading in Plaintiffs' memorandum of law states that Plaintiffs are entitled to summary judgment, the arguments in support thereof seem to suggest there are material issues of fact requiring a determination by a jury.  Plaintiffs only definitively seek summary judgment with respect to three causes of action – unjust enrichment, breach of the implied covenant of good faith and fair dealing, and violation of Section 1981.

242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide the district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

II.   Plaintiff Crown's Standing

Defendants BCA, Vitucci (collectively, the "BCA Defendants") and BC Benjamin move for summary judgment with respect to all claims asserted by Plaintiff Crown on the ground that the entity lacks standing to bring suit since it was dissolved in 2004. Plaintiffs oppose summary judgment on the ground that Defendants should have known that Crown was dissolved because it was public knowledge that their due diligence should have discovered. (Pl. Mem. of Law 7.)

Plaintiffs further argue that upon the dissolution of Crown, its business interests transferred to its owner, Brown. (Id.)

It is undisputed that Plaintiffs entered into the Lease Agreement for the Bentley in April 2008. It is further undisputed that Crown was dissolved by proclamation in 2004, four years prior to entering into the lease on the Bentley. Moreover, Crown was dissolved approximately ten years before the instant litigation was commenced in 2014.

Whether a corporation has the capacity to sue or be sued is a question of state law. See Next Millenium Realty, LLC v. Adchem Corp., 690 Fed. App'x 710, 715 (2d Cir. 2017) (citation omitted). Section 1005(a)(1) of the New York Business Corporation Law provides that a dissolved corporation "shall carry on no business except for the purpose of winding up its affairs." Id. (quoting N.Y. B.C.L. § 1005(a)(1)). In accordance with this directive, New York courts have held that "[w]ith limited exceptions, a dissolved corporation 'does not enjoy the right to bring suit . . . .'" Weiss v. Markel, 110 A.D.3d 869, 871 (2d Dep't 2013) (quoting Moran Enters, Inc. v. Hurst, 66 A.D.3d 972, 975 (2d Dep't 2009)); see also B&O Realty Corp. v. Jeng, 201 A.D.2d 439, 439 (1st Dep't 1994) (finding that a dissolved corporation had no legal capacity to commence an action). While a dissolved corporation may sue or be sued after its dissolution "for any right or claim existing or any liability incurred before such dissolution," Next Millenium Realty, 690 Fed. App'x at 715 (citing N.Y. B.C.L.§ 1006(b)), "until its affairs are fully adjusted," Rodgers v. Logan, 121 A.D.2d 250 (1st Dep't 1986), the corporate Plaintiff herein was dissolved four years prior to the execution of the lease for the Bentley. Accordingly, it cannot be said that the lease for the Bentley was an obligation incurred prior to its dissolution permitting Crown to sue upon it; nor does the Bentley's lease relate in any way to the winding up of Crown.

Based on the foregoing, this Court finds that Crown has no standing to bring the claims asserted herein on the grounds that it was a dissolved corporation lacking the capacity to sue as of both the time the lease was entered into and the within action was commenced. Accordingly, this Court respectfully recommends that Defendants be granted judgment as a matter of law with respect to all claims asserted by Crown in this action.

III.   The Contract and Quasi-Contract Claims

The remaining Plaintiff, Brown, asserts claims against the BCA Defendants and BC Benjamin for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. The BCA Defendants and BC Benjamin move for summary judgment on all three claims.  Plaintiff opposes Defendants' motions and cross-moves for summary judgment with respect to his claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing, which Defendants oppose. Defendants assert the following grounds in support of their motions for summary judgment: (1) the Rooker-Feldman doctrine; (2) res judicata; and, (3) that the claims fail as a matter of law.

A.     The Rooker-Feldman Doctrine

Pursuant to the Rooker-Feldman doctrine, Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), aff'd, Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), federal district courts may not exercise subject matter jurisdiction over actions that seek appellate review of state court judgments. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284-85 (2005). The Second Circuit has established four requirements for applying the Rooker-Feldman doctrine: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by the state court judgment; (3) the plaintiff must invite the district court to review and reject that judgment; and, (4) the state court must have rendered

judgment before federal district court proceedings commenced. See Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

Here, Plaintiff seeks to have this Court find that the BCA Defendants and BC Benjamin wrongfully deprived him of the use of the Bentley, for which he claims to have made adequate payments. However, the Nassau County Supreme Court has already determined that Plaintiff failed to make the required payments on the Bentley when it awarded a default judgment to APCC in 2012, wherein APCC was awarded damages in the amount of $122,333.80. Plaintiff is essentially asking this Court to overturn the state court judgment that found him in default under the terms of the Bentley's lease.

In opposition, Plaintiff argues that the Rooker-Feldman doctrine does not apply because there is no privity between Defendants and APCC. (Pl. Mem. of Law 7-9.) However, Plaintiff appears to overlook that the lease for the Bentley was assigned to APCC from BCA almost immediately after it was entered into. It is black-letter law that an assignee stands in the shoes of the assignor. See Mortgage Electronic Registration Sys., Inc. v. Rambaran, 97 A.D.3d 802, 804 (2d Dep't 2012); Arena Constr. Co., Inc. v. J. Sackaris & Sons, Inc., 282 A.D.2d 489, 489 (2d Dep't 2001). It is undisputed that the lease herein was assigned by BCA to APCC.  Accordingly, APCC stood in BCA's shoes with respect to any right to recover rental payments due under the lease from Plaintiff. The judgment obtained by APCC in state court is no different than if the judgment had been obtained by BCA.

Based on the foregoing, this Court finds that the Rooker-Feldman doctrine deprives the Court of jurisdiction over Plaintiff's contractual and quasi-contractual claims and requires that summary judgment be awarded to the BCA Defendants and BC Benjamin on those claims. See Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014) (noting that the

Rooker-Feldman doctrine bars claims that "invite . . . review and rejection" of state court judgments).

B.     Res Judicata

Defendants also assert that res judicata bars Plaintiff's contractual and quasi-contractual claims. Res judicata is the doctrine that a final judgment on the merits precludes re-litigation of issues that were or could have been raised in a given action. See Farbstein v. Hicksville Pub. Library, 323 F. Supp. 2d 414, 422 (E.D.N.Y. 2004) (citing Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 n.6 (1982)). In applying res judicata, a state court judgment rendered by a court of competent jurisdiction is binding not only in state court, but also in federal court. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984) ("It is now settled a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

Res judicata comprises two doctrines: claim preclusion and issue preclusion. While the BCA Defendants and BC Benjamin cite to both doctrines in their moving papers, their arguments seem to relate solely to claim preclusion as grounds for their entitlement to summary judgment.

"[C]laim preclusion prevents parties from raising issues that could have been raised and decided in a prior action – even if they were not actually litigated." Lucky Brand Dungarees, Inc. v. Marcel Fashion Group, Inc., __ U.S. __, 140 S. Ct. 1589, 1594 (2020). In order for claim preclusion to apply, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff[] or those in privity with [him]; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted). A default judgment constitutes a judgment on the merits. See Council v. Better Homes Depot, Inc.,

04 CV 5620, 2006 WL 2376381, at *4 (E.D.N.Y. Aug. 16, 2006) ("A judgment by default may be the basis for claim preclusion to the same extent as any other valid, final judgment."). Under New York's "transactional" approach to claim preclusion, a claim should have been brought if it arises "out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." New York v. Mountain Tobacco Co., 942 F.3d 536, 543 (2d Cir. 2019) (citations omitted).

The within action meets the requisite criteria for claim preclusion. First, the 2012 default judgment entered against Plaintiff in state court is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as that judgment. Second, the state court action involved the same parties herein – Plaintiff and APCC, who as noted above, is in privity with the BCA Defendants and BC Benjamin. Finally, the contractual and quasi-contractual claims asserted by Plaintiff in the Amended Complaint are merely defenses that could have – and should have – been raised in the underlying state court action for Plaintiff's default under the terms of the Bentley's Lease Agreement.

In opposition to Defendants' motions, Plaintiff raises the same privity argument outlined above in connection with the Rooker-Feldman doctrine. For the reasons set forth above, Plaintiff's argument is similarly unavailing since there is clearly privity between Defendants and APCC. Accordingly, this Court finds that Plaintiff's contractual and quasi-contractual claims are barred by the doctrine of res judicata. As such, the Court respectfully recommends that the BCA Defendants and BC Benjamin be granted summary judgment with respect to Plaintiff's claims for breach of contract, unjust enrichment and breach of the implied covenant of good faith and

14

fair dealing.[3] The Court further recommends that Plaintiff's motion for summary judgment with respect to the claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing be denied.

IV.   The Fraud Claims

The Fourth and Fifth Causes of Action contained in the Amended Complaint allege fraud by the BCA Defendants and BC Benjamin in the form of misrepresentations made to third parties. (Am. Compl. ¶¶ 130-42.) The Sixth Cause of Action is for promissory estoppel, alleged against the BCA Defendants and BC Benjamin. (Id. ¶¶ 143-48.) The BCA Defendants and BC Benjamin move for summary judgment on all three claims.

In response to Defendants' motions, Plaintiff states in his memorandum of law that he withdraws the third-party fraud claims. (Pl. Mem. of Law 14.) Accordingly, the Fourth and Fifth Causes of Action alleged in the Amended Complaint should be deemed withdrawn and need not be addressed herein.

It is unclear from Plaintiff's memorandum of law whether the voluntary dismissal of the fraud claims also includes the claim for promissory estoppel. However, even if it is not included in Plaintiff's withdrawal of the fraud claims, Plaintiff fails to oppose Defendants' arguments with respect to the promissory estoppel claim whatsoever.

"Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Maher v. Alliance Mortgage Banking Corp., 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) (quotation omitted); Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006)

---

[3] Because this Court recommends that Defendants be granted summary judgment on Plaintiff's contractual and quasi-contractual claims on jurisdictional and procedural grounds, there is no need to reach the merits of those claims.

("Because plaintiff's opposition papers did not address defendants' motion for summary judgment on this claim, the claim is deemed abandoned . . . . ").  Since Plaintiff's opposition to Defendants' motions contains no mention of his promissory estoppel claim, this Court respectfully recommends that the Sixth Cause of Action be deemed abandoned and that summary judgment be granted to the BCA Defendants and BC Benjamin with respect to that claim.

V.      Section 1981

Plaintiff alleges that Defendants Nash and Kenah intentionally discriminated against him because of his race, which is African-American, in violation of Section 1981. (Am. Compl. ¶¶ 149-53.) The County Defendants and Plaintiff both move for summary judgment with respect to this claim.

Section 1981 "prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, [and it] covers . . . efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations, as well as discrimination by private parties . . . in enforcing the terms of a contract." Mian v. Donaldson, Lufkin & Jenret Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam) (quoting Patterson v. McLean Credit Union, 491 U.S. 164, 177 (1989)) (alteration in original). To prevail on a claim under Section 1981, Plaintiff must demonstrate: (1) that is a member of a racial minority; (2) that defendants intended to discriminate against him on the basis of his race; and, (3) that the discrimination "concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Mian, 7 F.3d at 1087.

Here, there is no evidence offered whatsoever to support Plaintiff's claim that Nash and Kenah prevented him from enforcing or pursuing judicial enforcement of any rights, contractual

or otherwise. Moreover, as the Supreme Court recently held, a Section 1981 Plaintiff must demonstrate that race was the "but-for" cause of the discriminatory conduct he alleges to have suffered. Comcast Corp. v. National Ass'n of African Am.-Owned Media, __ U.S. __, 140 S. Ct. 1009, 1013-19 (2020). Plaintiff cannot meet this burden. Nash and Kenah arrested Plaintiff based on a complaint by Vitucci for Plaintiff's unauthorized use of the Bentley. After years of discovery, there is no evidence before this Court that Plaintiff's race played any factor in his arrest, let alone that it was the "but-for" cause of his arrest. Accordingly, this Court respectfully recommends that the County Defendants' motion for summary judgment be granted with respect to Plaintiff's Section 1981 claim and that Plaintiff's cross-motion be denied.

VI.   Section 1983

Plaintiff's Eighth Cause of Action alleges that Nash and Kenah violated his civil rights by falsely arresting him and conducting an unlawful search and seizure, in violation of the Fourth, Fifth, and Fourteenth Amendments. (Am. Compl. ¶¶ 154-63.) Although not explicitly pleaded in the Amended Complaint, Plaintiff also argues that Nash and Kenah violated his equal protection and due process rights as well. The County Defendants move for summary judgment on this claim. Plaintiff opposes the motion.

A.   False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . is substantially the same as a claim for false arrest under New York law."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); Folk v. City of New York, 243 F. Supp. 3d 363, 371 (E.D.N.Y. 2017) (quoting Weyant,101 F.3d at 852).  Under New York law, a plaintiff alleging false arrest must demonstrate: (1) "the defendant intended to confine" the plaintiff; (2)

"the plaintiff was conscious of the confinement;" (3) "the plaintiff did not consent to the confinement;" and, (4) "the confinement was not otherwise privileged." Broughton v. State, 37 N.Y.2d 451, 456 (1975); see also Folk, 243 F. Supp. 3d at 371 (same).  An arrest is privileged if it was "based on probable cause."  Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Broughton, 373 N.Y.2d at 458).  Accordingly, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, . . . whether that action is brought under state law or under § 1983." Weyant, 101 F.3d at 852 (citations and quotation marks omitted); see also Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (same).

"In general, probable cause to arrest exists when officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852 (citing cases).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)).  The arresting officer "need only possess enough information to convince a reasonable person that the arrestee committed an offense, . . . and if he does, then he is immune from a subsequent claim of false arrest." Brown v. City of New York, 201 F. Supp. 3d 328, 331 (E.D.N.Y. 2016) (citations omitted).

"In a lawsuit claiming false arrest, '[t]he burden of establishing the absence of probable cause rests on the plaintiff.'" Lin v. City of New York, No. 14 Civ. 9994, 2016 WL 7439362, at *7 (S.D.N.Y. Dec. 21, 2016) (quoting Berry v. Marchinkowski, 137 F. Supp. 3d 495, 524 (S.D.N.Y. 2015)).  On summary judgment, the existence of probable cause may be determined as

a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852.  Where, however, the parties dispute material facts bearing on such events and knowledge, summary judgment is not appropriate.  See id.; see also Moore v. Comesanas, 32 F.3d 670, 673 (2d Cir. 1994) (finding that where question of whether arresting officer had probable cause was "predominantly factual in nature, [it] was properly presented to the jury").

Here, it is undisputed that Plaintiff stopped making payments on the Bentley during 2011. (Pl. Dep. 24, Ex. DTE-1.) It is further undisputed that Vitucci contacted the Nassau County Police Department and complained that Plaintiff had failed to make payments on the Bentley, had not responded to efforts to contact him, and had failed to return the vehicle. (County Def. Ex. D.) Vitucci also produced a copy of the Bentley's title, which showed that BCA was the owner, not Plaintiff. (County Def. Ex. H.) Vitucci signed two supporting depositions attesting to the foregoing and was the complaining witness on the accusatory instrument. (County Def. Ex. E. )

"When determining whether probable cause exists[,] courts must consider the facts available to the officer at the time of the arrest and immediately before it." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (emphasis in original).  "Probable cause does not require absolute certainty." Panetta, 460 F.3d at 395 (quoting Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003)). "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." Panetta, 460 F.3d at 395 (quoting Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (alteration in original). Probable cause can exist "even where it is based on mistaken information, so long as the

arresting officer acted reasonably and in good faith in relying on that information." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).

Here, Nash and Kenah had a complaint from the allegedly injured party – Vitucci – that Plaintiff was behind on his lease payments and, therefore, operating the Bentley without authorization. Relying on the information presented to them, this Court finds that there is no question that Nash and Kenah had probable cause to arrest Plaintiff. See Panetta, 460 F.3d at 396 ("[O]nce a police office has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."). Having had probable cause, the arrest of Plaintiff was privileged and his false arrest claim fails as a matter of law.

B.     Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires municipal entities to treat all similarly situated individuals alike. See City of Cleburne v. Cleburne Living Cent., Inc., 473 U.S. 432, 439 (1985). A plaintiff making an equal protection claim may proceed under one of two theories: (1) that he was subjected to "selective enforcement;" or (2) that he was treated as a "class of one." Raus v. Town of Southampton, No. CV 1307056, 2015 WL 2378974, at *7 (E.D.N.Y. May 18, 2015), aff'd, 661 Fed. App'x 81 (2d Cir. 2016).

In order to prevail on a claim for violation of the Equal Protection Clause based on selective enforcement, Plaintiff must demonstrate that "(1) [he] was 'treated differently from other similarly situated 'individuals and (2) this 'differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Butler v. City of Batavia, 323 Fed. App'x 21, 22 (2d Cir. 2009) (quoting Cine Sk8, Inc. v. Town of Henrietta, 507

F.3d 778, 790 (2d Cir. 2007)). "A 'class of one 'claim succeeds where the plaintiff can show intentional treatment different than those similarly situated, and a lack of rational basis for that treatment." Raus, 2015 WL 2378974, at *7 (citing Sacher v. Village of Old Brookville, 967 F. Supp. 2d 663, 670 (E.D.N.Y. 2013)) (additional citation omitted). Under either application, a plaintiff is required to demonstrate "the existence of similarly situated others." Segreto v. Town of Islip, No. 12-CV-1961, 2014 WL 737531, at *6 (E.D.N.Y. Feb. 24, 2014).

Here, while Plaintiff argues that Nash and Kenah arrested him because he is African-American, he has provided no evidence demonstrating that similarly situated Caucasian individuals were treated differently. As set forth above in connection with Plaintiff's Section 1981 claim, after years of discovery there is simply no evidence before the Court that Plaintiff's race played any party in his arrest. Accordingly, Plaintiff's Section 1983 claim for violation of his equal protection rights fails as a matter of law.

C.     Due Process

"To prevail on a procedural due process claim under Section 1983, a plaintiff must (i) 'identify a property right, '(ii) 'show that the state has deprived him of that right, 'and (iii) 'show that the deprivation was effected without due process.'" Palmer v. City of New York, No. 19-CV-5542, 2021 WL 4480672, at *14 (E.D.N.Y. Sept. 30, 2021) (quoting Tang v. Visnauskas, 847 Fed. App'x 24, 26 (2d Cir. 2021)) (additional citation omitted). Here, while Plaintiff argues that Nash and Kenah violated his due process rights, by Plaintiff's own admission, Nash and Kenah were not the ones to seize the Bentley; rather, the Hackensack Police Department effected the seizure. (Pl. 56.1 ¶¶ 127-28.) Accordingly, there could not have been any deprivation of property by the County Defendants. Since the County Defendants did not

seize Plaintiff's property within the meaning of Section 1983, Plaintiff's due process claim fails as a matter of law.

Based on the foregoing, this Court respectfully recommends that the County Defendants' motion for summary judgment be granted with respect to Plaintiff's Section 1983 claim.[4]

VII.   Sections 1985 and 1986

Plaintiff alleges that all Defendants conspired to deprive him of his civil rights, in violation of Section 1985, (id. ¶¶ 172-79), and that all Defendants failed to prevent the violation of his civil rights, in violation of Section 1986. (Id. ¶¶ 180-85.) All Defendants move for summary judgment with respect to these claims. Plaintiff opposes the motions.

A.   Section 1985

To prevail on a conspiracy claim pursuant to Section 1985(3), a plaintiff must demonstrate: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." Mian, 7 F.3d at 1087 (citation omitted). "[T]he conspiracy must also be motivated 'by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' actions.'" Mian, 7 F.3d at 1088 (quoting United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 829 (1983)).

As a threshold matter, "Section 1985 claims require a showing of an underlying constitutional violation." Singer v. City of New York, 417 F. Supp. 3d 297, 328 (S.D.N.Y. 2019)

---

[4] Having found no constitutional violation, there is no need to reach the County Defendants' additional argument that they are entitled to qualified immunity.

(citing cases); see also Okoh v. Sullivan, No. 10 Civ. 2547, 2011 WL 672420, at *4 (S.D.N.Y. Feb. 24, 2011) ("Conspiracy under section 1985 requires an underlying constitutional violation."). As discussed above in connection with Plaintiff's Section 1983 claim, he has not demonstrated any constitutional violations by Defendants. Accordingly, Plaintiff's conspiracy claim fails as a matter of law.

Even if Plaintiff could demonstrate some sort of underlying constitutional violation, his conspiracy claim would still fail. As set forth above, there is no evidence that any of the actions taken by Defendants against Plaintiff were racially motivated. Nor is there any evidence of a meeting of the minds among the Defendants. "[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003). Rather, Plaintiff's conspiracy claim is based on nothing more than his own unsupported conclusory allegations, which are insufficient to defeat a motion for summary judgment. See Mass v. McClenahan, 893 F. Supp. 225, 231 (S.D.N.Y. 1995) ("[A] plaintiff must do more than make vague, general or conclusory allegations in order to establish the existence of a conspiracy actionable under § 1985(3)."). Accordingly, this Court respectfully recommends that Defendants' motions for summary judgment be granted with respect to Plaintiff's Section 1985 conspiracy claim.

B.   Section 1986

Section 1986 provides, in pertinent part:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

23

42 U.S.C. § 1986.  Accordingly, a claim under Section 1986 is "necessarily predicated"

on a Section 1985(3) claim. <u>L.K. v. Sewanhaka Cent. High Sch. Dist.</u>, 641 Fed. App'x

56, 59 (2d Cir. 2016) (citing <u>Brown v. City of Oneonta</u>, 221 F.3d 329, 341 (2d Cir.

2000)). "In other words, a claim under 42 U.S.C. § 1986 for failure to prevent the

violation of a person's civil rights may not exist absent a viable section 1985 claim." <u>Rizk</u>

<u>v. City of New York</u>, 462 F. Supp. 3d 203, 227 (E.D.N.Y. 2021) (citation and internal

quotation marks omitted).

      Based on the foregoing, since Plaintiff's Section 1985 conspiracy claim fails as a

matter of law, the same result occurs with respect to his Section 1986 claim. Accordingly,

this Court respectfully recommends that Defendants' motions for summary judgment be

granted with respect to Plaintiff's Section 1986 claim.

VIII.   <u>Municipal Liability</u>

      Plaintiff's Ninth Cause of Action alleges municipal liability, under both a custom

or policy theory and a failure to train theory, pursuant to Section 1983, against the

County Defendants. The County Defendants move for summary judgment with respect to

this claim.

      Pursuant to the Supreme Court's decision in <u>Monell v. New York City Department of</u>

<u>Social Services</u>, 436 U.S. 658 (1978), "a local government may not be sued under § 1983 for an

injury inflicted solely by its employees or agents."  <u>Id.</u> at 694.  Rather, a municipal entity may

only be held liable where injury results from the "execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy."  <u>Id.</u>

      A municipality may not be held liable under Section 1983 under a <u>respondeat superior</u>

theory.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986).  Therefore, "to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell, 436 U.S. at 690-91).  "The plaintiff must show a 'direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.'"  Mazzone v. Town of Southampton, 283 F. Supp. 3d 38, 61 (E.D.N.Y. 2017) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

As with Plaintiff's Section 1985 conspiracy claim, municipal liability "is an extension of liability, not an independent cause of action, and therefore requires an underlying constitutional violation." Soto v. City of New York, 132 F. Supp. 3d 424, 459 (E.D.N.Y. 2015) (citing Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)); see also Demosthene v. City of New York, No. 14 CV 816, 2019 WL 3992868, at *5 (E.D.N.Y. Aug. 16, 2019) (stating that "a Monell claim cannot survive absent a constitutional violation"); Albert v. City of New York, Nos. 17-cv-3957, 17-cv-4315, 2018 WL 5084824, at *4 (E.D.N.Y. Oct. 18, 2018) ("Monell liability requires, as a threshold matter, an underlying constitutional violation committed by an employee acting under color of law."). Because there is no constitutional violation herein, Plaintiff's Monell claim fails as a matter of law.

Based on the foregoing, this Court recommends that the County Defendants' motion for summary judgment be granted with respect to Plaintiff's municipal liability claim.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendants' motions for summary judgment be granted in their entirety and that Plaintiff's cross-motion for summary judgment be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated:  Central Islip, New York
        February 16, 2022                           /s/      Anne. Y. Shields
                                                    ANNE Y. SHIELDS
                                                    United States Magistrate Judge